IN the MATTER OF DISCIPLINARY
PROCEEDINGS AGAINST Grant D. WALDO,
Attorney at Law.†

Supreme Court

*No.87–0204–D. Filed September 28, 1988.*

(Also reported in 429 N.W.2d 77.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

The referee recommended that the license of Grant D. Waldo to practice law in Wisconsin be suspended for two years as discipline for misconduct consisting of making false statements in a request for substitution of judges in pending litigation accusing the judge of partiality for opposing counsel and of his having made misrepresentations in respect of his position in a probate matter. We determine that the

---

† Motion for reconsideration denied, without costs, on October 6, 1988.

recommended discipline is excessive when measured against the misconduct in which Attorney Waldo was found to have engaged and in light of Attorney Waldo's prior discipline; a suspension of his license to practice law for a period of one year is appropriate discipline.

Attorney Waldo was admitted to the practice of law in 1962 and practices in Milwaukee. In 1985 the court suspended his license to practice law for 60 days as discipline for his failure to prepare and file written findings of fact, conclusions of law and a divorce judgment for more than five years, despite numerous requests to do so, and for his failure to respond to two letters of inquiry into the matter from the Board of Attorneys Professional Responsibility (BAPR). *Disciplinary Proceedings Against Waldo*, 126 Wis. 2d 287, 376 N.W.2d 582 (1985). In 1977 Attorney Waldo was publicly reprimanded for neglect of legal matters and for his failure to cooperate in the investigation of his misconduct. The referee in this proceeding is Attorney Robert P. Harland.

Following a disciplinary hearing, the referee made the following findings of fact. In 1984 Attorney Waldo represented the defendant in a civil action in Milwaukee county circuit court. He filed a request for substitution in that action, which he supported by an affidavit of prejudice in which he stated, among other things, that the presiding judge, the Hon. Michael J. Skwierawski, had failed to act impartially in the early stages of the action for the reason that the plaintiff's attorney was a relative of an attorney he termed a "strong and active member" of various Polish organizations which had sought the appointment of Michael Skwierawski to the office of circuit judge. The affidavit also stated that a member of the law firm with

which the plaintiff's attorney was associated personally and as a leader of various Polish organizations "strongly and actively led the fight" for Michael Skwierawski's appointment and that those organizations were "under the leadership" of that attorney. Because of this, Attorney Waldo's affidavit averred, Judge Skwierawski was "deeply indebted to [these people] for their strong support, influence and leadership in helping him obtain his judicial appointment."

Contrary to the statements in that affidavit, the referee found that the relative of the plaintiff's attorney was not a strong or active member of any Polish organization that had sought Judge Skwierawski's appointment but that his only connection with one organization which had advocated that appointment was his membership solely for insurance purposes. The referee further found that he did not know the judge, either professionally or socially, had never met him and had not taken any action on his behalf concerning the judicial appointment. The referee also found that the attorney in the law firm with which the plaintiff's attorney was associated had had no leadership position in any Polish organization that sought Judge Skwierawski's appointment nor had been personally or as a leader of any Polish organization strongly or actively urging the appointment; his only involvement in the appointment process was his attendance at one meeting at which he and others recommended Michael Skwierawski to a committee of the Polish National Alliance as a possible candidate for appointment. In addition, the referee found that the plaintiff's attorney himself did not know the judge and had never appeared before him prior to commencement of the action in which the affidavit of prejudice was filed.

The referee found that Attorney Waldo's attempt to prove his charge of the judge's bias and prejudice failed, and he concluded that, by making false statements concerning the judge, knowing they were untrue, Attorney Waldo violated SCR 20.47(2): "A lawyer may not knowingly make false accusations against a judge or other adjudicatory officer."

In another matter, in 1985, following the death of a woman whose will he had prepared, Attorney Waldo made arrangements with a funeral business for the woman's burial, assuring that the bill would be promptly paid. He subsequently delivered the woman's will to the circuit court for filing but did not apply for its probate or for letters testamentary. Three months later Attorney Waldo's license to practice law was suspended for 60 days as discipline for misconduct, but he did not notify the funeral director of that fact.

The referee concluded that Attorney Waldo engaged in misrepresentations by failing to reveal to the funeral director that his license to practice law had been suspended and that he did not represent the estate of the decedent and, consequently, was in no position to arrange payment of the funeral bill. The referee therefore concluded that Attorney Waldo violated SCR 20.04(4), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

Attorney Waldo's professional misconduct constitutes a serious breach of his duties as attorney to the courts in which he practices, as well as to the public to whom he holds himself out as an attorney. He sought to use court procedures for his and his client's benefit on the basis of statements he knew to be false; he also attempted to use his status as attorney to obtain

services for a former client, even though he knew his right to practice law had been suspended. The seriousness of this misconduct is aggravated by the fact that Attorney Waldo was twice previously disciplined for professional misconduct.

Accordingly, a suspension of his license to practice law for a considerable period of time is called for, not only to protect the courts, his clients and the public from further misconduct, but also to impress upon him the need to understand and accept the responsibilities of the legal profession and to establish that he will, in the future, properly perform the duties of the profession, should his license to practice law be reinstated. Adopting the referee's findings and conclusions, we determine that a one-year suspension will adequately serve those purposes.

IT IS ORDERED that the license of Grant D. Waldo to practice law in Wisconsin is suspended for a period of one year, commencing October 10, 1988.

IT IS FURTHER ORDERED that within one year of the date of this order Grant D. Waldo pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing of his inability to pay the costs within that time, the license of Grant D. Waldo to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Grant D. Waldo comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.